# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

---

CRISTINA TANNER, individually and as legal guardian
of Jason Tanner, and as assignee of Risen Foods LLC,

                        Plaintiff,

v.

HEFFERNAN INSURANCE BROKERS, INC., DANA
SCHILLER, and RISEN FOODS LLC,

                        Defendants.

6:19-cv-00255(BKS/TWD)

---

**Appearances:**

*For Plaintiff:*
Laurence D. Behr
Barth Sullivan Behr LLP
43 Court Street, Suite 600
Buffalo, NY 14202

*For Defendants Heffernan Insurance Brokers, Inc.
and Dana Schiller:*
Peter T. Shapiro
Lewis Brisbois Bisgaard & Smith LLP
77 Water Street, Suite 2100
New York, NY 10005

**Hon. Brenda K. Sannes, United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I.    INTRODUCTION

Plaintiff Cristina Tanner, individually, as legal guardian of Jason Tanner, and as assignee of Risen Foods LLC, filed this action in New York Supreme Court, Oneida County, against Defendants Heffernan Insurance Brokers, Inc. ("Heffernan Brokers"), Dana Schiller, and Risen Foods LLC. (Dkt. No. 2). Defendants Heffernan Brokers and Schiller, California citizens, removed this case from state court on the basis of diversity of citizenship under 18 U.S.C.

§ 1331, alleging that, although both Plaintiff and Defendant Risen Foods are New York citizens, Risen Foods was fraudulently joined and thus does not destroy diversity. (Dkt. No. 1). Plaintiff moves to remand this case on the grounds that removal was untimely and Risen Foods was not fraudulently joined. (Dkt. No. 5). Heffernan Brokers and Schiller oppose Plaintiff's motion. (Dkt. No. 10).[1] For the reasons that follow, Plaintiff's motion to remand is granted.

## II.    FACTS

This action stems from a motor vehicle accident on April 29, 2013, in which Jason Tanner's "vehicle was struck head-on by a delivery truck owned by defendant" Risen Foods. (Dkt. No. 2, ¶ 15). Tanner was severely injured during the accident, and is "completely and permanently incapacitated and disabled." (*Id.* ¶ 17). This is the third in a series of actions arising from that accident.

### A.    First Action – Declaratory Judgment

At the time of the accident, Risen Foods had a $1 million commercial automobile liability insurance policy ("auto policy") issued by State Farm Automobile Insurance Company ("State Farm"), a $1 million general liability insurance policy issued by Citizens Insurance Company of America ("Citizens"), and a $2 million umbrella liability policy also issued by Citizens. (*Id.* ¶¶ 18, 22, 26). Upon determining that Jason Tanner's injuries were extremely serious and that the $1 million policy limit would be insufficient to compensate him, State Farm advised Risen Foods to put its umbrella carrier (Citizens) on notice. (*Id.* ¶¶ 20–21). Citizens denied umbrella coverage for the accident on the ground that the State Farm auto policy was not listed on the umbrella policy's schedule of underlying policies, (*id.* ¶ 31), and commenced an action in this Court against, among others, Risen Foods, Jason Tanner, and Plaintiff, seeking a declaration that

---

[1] Risen Foods, which in its answer admitted "all the allegations" contained in the Complaint, (Dkt. No. 7, ¶ 1), has not responded to the motion.

it was not obligated to provide umbrella liability coverage in connection with Jason Tanner's accident, (*id.* ¶¶ 31–32); *see Citizens Ins. Co. of Am. v. Risen Foods, LLC*, No. 14-cv-493 (N.D.N.Y. Apr. 29, 2014), ECF No. 1. Citizens ultimately prevailed, and the Court entered judgment declaring that Citizens was not required to defend or indemnify Risen Foods under the general liability or umbrella policy in connection with the accident. *See id.*, ECF Nos. 87, 88 (granting the defendants' motion for summary judgment and entering judgment in defendants' favor); *Citizens Ins. Co. v. Risen Foods, LLC*, 880 F.3d 73, 80 (2d Cir. 2018) (finding that "neither the businessowners policy nor the umbrella policy provides coverage" and reversing judgment ); *Citizens Ins. Co.*, No. 14-cv-493 (Mar. 29, 2018), ECF No. 98 (entering amended judgment in Citizens' favor).

### B. Second Action – Personal Injury Action and Settlement Agreement

Following the accident, Plaintiff and Jason Tanner filed a personal injury action in state court against Risen Foods and Petr Tkach.[2] (Dkt. No. 2, ¶ 16). On July 20, 2017, the state court entered summary judgment against Risen Foods and Petr Tkach on the issue of liability. (*Id.* ¶ 28; *see also* Dkt. No. 2, at 57–58).

On July 16, 2018, Plaintiff and Risen Foods entered into a "Settlement Agreement with Full and Partial Release, Hold Harmless Agreement, and Assignment of Claims." (Dkt. No. 2, at 31–41).[3] In the Settlement Agreement, Plaintiff and Risen Foods acknowledged that the damages the Tanners sustained as a result of the accident exceeded $3 million, (*Id.* at 31), and resolved "that portion of the Tanners' claims that involve the financial responsibility of State Farm,"

---

[2] Tkach, an employee of Risen Foods, was driving the vehicle that collided with Jason Tanner's vehicle. (Dkt. No. 2, at 43).

[3] Plaintiff and Risen Foods entered into the Settlement Agreement several months after Citizens obtained the declaration that its policies did not provide coverage for the motor vehicle accident.

3

allowing "the Tanners to receive the remaining $984,172.17" of that policy. (*Id.*). Risen Foods assigned to the Tanners "all claims and every cause or right of action" it "ha[d] or may have" against Heffernan Brokers "arising out of" Heffernan Brokers' alleged failure to procure $2 million "worth of umbrella insurance coverage applicable to [Risen's] business automobile operations." (*Id.* at 36). In return, the Tanners fully released State Farm and Tkach, and released and "discharge[d] Risen Foods, LLC, EXCEPTING ONLY" that the Tanners retained and reserved "all rights to recover further against Risen Foods, LLC, solely to the extent" Risen Foods "and/or" the Tanners "is, are or may be or become entitled to recover money damages against Heffernan" Brokers in connection with Heffernan Brokers' "negligent performance of contracted services." (*Id.* at 32). The Tanners further agreed "that, if in order to secure for [themselves] the benefits of Risen Foods, LLC's within Assignment of Claims, an action is hereafter brought against Risen Foods, LLC, any damages awarded against Risen Foods, LLC will be collectable only from Heffernan Insurance Brokers." (*Id.*).

On August 6, 2018, the Tanners and Risen Foods executed a stipulation of discontinuance without prejudice in the state court action. (Dkt. No. 11-1). On August 21, 2018, the state court entered an order approving a "partial settlement" of the action. (Dkt. No. 11-2, at 2).

   **C.**  **Third (Present) Action – Negligent Breach of Contract and Damages**

On December 18, 2018, Plaintiff filed an Amended Summons with Notice in state court naming Heffernan Brokers, Schiller, and Risen Foods as defendants. (Dkt. No. 5-2). It contained the addresses of all parties—with an address for Plaintiff in New York, Heffernan Brokers and Schiller in California, and Risen Foods in New York. The Amended Summons with Notice alleged:

> [T]his action, as against defendants Heffernan Insurance Brokers, Inc. and Dana Schiller, is for negligent breach of a contract to assist defendant Risen Foods LLC in obtaining umbrella insurance coverage for its business operations. As against defendant Risen Foods LLC, this action is for damages for personal injuries sustained in a motor vehicle accident, limited under a settlement agreement to the amount for which defendants Heffernan Insurance Brokers, Inc. and Dana Schiller are liable to the plaintiffs in this action.

(*Id.* at 1–2).

On January 10, 2019, Heffernan Brokers and Schiller demanded service of the Complaint. (Dkt. No. 5-5). On January 25, 2019, Plaintiff filed the Complaint in state court. (Dkt. No. 2). Plaintiff attached a number of exhibits, including the Settlement Agreement, to the Complaint. (*Id.*). In the Complaint, Plaintiff alleges that Heffernan Brokers and Schiller negligently breached their contract with Risen Foods by failing to advise Risen Foods, when brokering its general liability and umbrella policies, that motor vehicle accidents would not be covered under the $2 million umbrella policy issued by Citizens. (*Id.* ¶¶ 92, 94). Plaintiff alleges that Risen Foods is liable to Plaintiff "to the extent and in the amount that Heffernan and Schiller are liable to Risen" and that she is "entitled to judgment against Risen in the amount of" $2 million plus interest. (*Id.* ¶¶ 108–109).

On February 21, 2019, Heffernan Brokers and Schiller removed this action based on diversity of citizenship and asserted in the Notice of Removal that, although Risen Foods, a New York LLC,[4] "is not diverse . . . the Court must disregard the lack of diversity created by naming this party as Risen was fraudulently joined as a defendant." (Dkt. No. 1, ¶ 5). Defendants further

---

[4] "[A] limited liability company . . . takes the citizenship of each of its members." *Bayerische Landesbank, N. Y. Branch v. Aladdin Capital Mgmt. LLC*, 692 F.3d 42, 49 (2d Cir. 2012); *Cosgrove v. Bartolotta*, 150 F.3d 729, 731 (7th Cir. 1998) (holding that, for purposes of diversity jurisdiction, a limited liability company has the citizenship of its membership). In its Notice of Removal, Defendants did not allege the citizenship of each of Risen Foods' members. Nor is that information in the Complaint. (Dkt. No. 2, ¶ 8) (alleging only that Risen's principal place of business is in New York). The parties, however, assume that Risen is not diverse, and for the purposes of this decision the Court will do so as well.

assert that "the Complaint reveals [that] Risen entered into a settlement with Plaintiff pursuant to which Plaintiff acquired Risen's rights as against Defendants, and Risen cannot be held liable to Plaintiff for damages. (*Id.*).[5]

## III. LEGAL STANDARDS

### A. Removal

"Generally, any civil suit initiated in state court over which a district court would have had original jurisdiction 'may be removed by . . . the defendants, to the district court of the United States for the district . . . embracing the place where such action is pending.'" *Gibbons v. Bristol-Myers Squibb Co.*, No. 17-2638, 2019 WL 1339013, at *3, 2019 U.S. App. LEXIS 9010, at *9 (2d Cir. Mar. 26, 2019) (quoting 28 U.S.C. § 1441(a)). "Section 1441 permits removal on the basis of either federal question jurisdiction or diversity of citizenship." *Id.* (citing *Marcus v. AT&T Corp.*, 138 F.3d 46, 52 (2d Cir. 1998)). The district courts have diversity jurisdiction "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 356 (2d Cir. 2011) (quoting § 1332(a)). "To remove a case based on diversity jurisdiction, the diverse defendant must aver that all of the requirements of diversity jurisdiction have been met." *Id.* (citing § 1446(a)). "Complete diversity of citizenship of the parties is required, since an 'action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.'" *Id.* (quoting § 1441(b)). "[I]n light of the congressional intent to restrict federal court jurisdiction, as well as the importance of preserving the independence of state governments, federal courts construe the

---

[5] Heffernan Brokers and Schiller filed a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Dkt. No. 4). United States Magistrate Judge Thérèse Wiley Dancks adjourned the response and reply deadlines pending a determination of Plaintiff's motion to remand. (Dkt. No. 8).

6

removal statute narrowly, resolving any doubts against removability." *Purdue Pharma L.P. v. Kentucky*, 704 F.3d 208, 213 (2d Cir. 2013) (quoting *Lupo v. Human Affairs Int'l, Inc.*, 28 F.3d 269, 274 (2d Cir. 1994)).

### B. Remand

"A plaintiff who believes a case has been improperly removed may seek remand under the provisions of 28 U.S.C. § 1447(c)." *Brown*, 654 F.3d at 356. Subsection 1447(c) "authorize[s] a remand for either a procedural defect asserted within 30 days of the filing of notice of removal or a lack of subject matter jurisdiction." *Mitskovski v. Buffalo & Fort Erie Pub. Bridge Auth.*, 435 F.3d 127, 131 (2d Cir. 2006); *see* § 1447(c) ("A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."). "Although procedural flaws in removal petitions are not jurisdictional, a defendant seeking removal must strictly comply with all of the statutory procedural requirements." *Village of Kiryas Joel v. Village of Woodbury*, No. 11-cv-8494, 2012 WL 1059395, at *2, 2012 U.S. Dist. LEXIS 44312, at *6 (S.D.N.Y. Mar. 29, 2012) (citing *Burr v. Toyota Motor Credit Co.*, 478 F. Supp. 2d 432, 437 (S.D.N.Y. 2006)).

### IV. DISCUSSION

### A. Defects in Removal Procedure

#### 1. Timeliness

Plaintiff claims that Defendants' February 21, 2019 Notice of Removal was untimely because Defendants removed more than 30 days after they received the Amended Summons with Notice—on December 18, 2018. (Dkt. No. 5-8, at 6–7). Defendants respond that because the Amended Summons with Notice did not disclose the basis for removability—Risen Foods'

7

fraudulent joinder—the 30-day period was not triggered until they received the Complaint on January 25, 2019. (Dkt. No. 10, at 9).

"A defendant's ability to remove any case satisfying federal jurisdictional predicates . . . is subject to statutorily-imposed time limits." *Cutrone v. Mortg. Elec. Registration Sys., Inc.*, 749 F.3d 137, 142 (2d Cir. 2014). "The general removal statute delineates two 30-day periods during which removal may occur." *Id.* (citing 28 U.S.C. § 1446(b)). "The first statutory provision requires that a defendant file its notice of removal within 30 days of the service or receipt of the initial pleading." *Id.* (citing § 1446(b)(1)). "The second section provides that if the case is not immediately removable, the defendant may file a notice of removal within 30 days of receiving 'a copy of an amended pleading, motion, order or other paper from which *it may first be ascertained* that the case is one which is or has become removable.'" *Id.* (emphasis added) (citing § 1446(b)(3)).

The Second Circuit has held that "a summons with notice may serve as an initial pleading under section 1446(b)." *Whitaker v. American Telecasting, Inc.*, 261 F.3d 196, 205 (2d Cir. 2001). To trigger the 30-day period, however, removability must be ascertainable from the face of the document. *Id.* at 206. The parties dispute whether the Amended Summons with Notice or the Complaint triggered the 30-day removal period.

"A case is removable when the initial pleading 'enables the defendant to 'intelligently ascertain' removability from the face of such pleading, so that in its petition for removal[, the] defendant can make a short and plain statement of the grounds for removal as required [by] 28 U.S.C. § 1446(a).'" *Id.* at 205–06 (quoting *Richstone v. Chubb Colonial Life Ins.*, 988 F. Supp. 401, 403 (S.D.N.Y. 1997)). The Second Circuit has explained that: "A pleading enables a defendant to intelligently ascertain removability when it provides 'the necessary facts to support

8

[the] removal petition.'" *Id.* at 206 (quoting *Richstone*, 988 F. Supp. at 403). "In cases where removal is based upon diversity, the facts required to support the removal petition include the amount in controversy and the address of each party." *Id.* "While this standard requires a defendant to apply a reasonable amount of intelligence in ascertaining removability, it does not require a defendant to look beyond the initial pleading for facts giving rise to removability." *Id.*

Here, the Amended Summons with Notice showed that the amount in controversy exceeded $75,000, and included the addresses of each party. (Dkt. No. 5-2). As both Plaintiff and Defendant Risen Foods have addresses in New York, however, the presence of diversity was not obvious from the face of the document. (*Id.* at 1). The Amended Summons with Notice indicates that Plaintiff is Risen Foods' assignee with respect to the negligent breach of contract claim against Heffernan Brokers and Schiller and that Plaintiff seeks damages against Risen Foods for personal injuries sustained in a motor vehicle accident. (*Id.* at 1–2). At best, Heffernan Brokers and Schiller could ascertain that the damages Plaintiff was seeking from Risen Foods was, in some manner, connected to the "the amount for which defendants Heffernan Insurance Brokers, Inc. and Dana Schiller are liable to" Plaintiff, as Risen Foods' assignee, for the alleged negligent breach of contract. (*Id.* at 2). From this limited information Defendants could not intelligently ascertain that Risen Foods had "no real connection with the controversy." *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 460–61 (2d Cir. 1998); *see also Briarpatch Ltd. L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 302 (2d Cir. 2004) ("[C]ourts overlook the presence of a non-diverse defendant if from the pleadings there is no possibility that the claims against that defendant could be asserted in state court."). The Court therefore concludes that the 30-day time period for removal did not start until Defendants received the Complaint and its attachments. As

Defendants received the Complaint at the earliest on January 25, 2019 and removed this action less than 30 days later, on February 21, 2019, the removal was timely.

### 2. Filing of Notice of Removal

Plaintiff asserts that because Defendants failed to include a copy of the Amended Summons with Notice when they filed their notice of removal, they violated the removal procedure set forth in § 1446(a), and remand is required. (Dkt. No. 5-8, at 10). Plaintiff further asserts that the Court should consider imposing sanctions under Federal Rule of Civil Procedure 11. (*Id.*). Defendants respond that their failure to include the Amended Summons as an exhibit to the notice of removal was "inadvertent and not deliberate." (Dkt. No. 10-1, ¶ 2).

To remove a civil action from state court, a defendant:

> *shall file* in the district court of the United States for the district and division within which such action is pending a notice of removal signed pursuant to Rule 11 of the Federal Rules of Civil Procedure and containing a short and plain statement of the grounds for removal, together with a copy of *all process, pleadings, and orders served upon such defendant* or defendants in such action.

28 U.S.C. § 1446(a). "[S]tatutory procedures for removal are to be strictly construed," *Syngenta Crop. Prot., Inc. v. Henson*, 537 U.S. 28, 32 (2002), and the Second Circuit has held that "out of respect for the limited jurisdiction of the federal courts and the rights of states, [courts] must 'resolv[e] any doubts against removability,'" *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 488 F.3d 112, 124 (2d Cir. 2007) (quoting *Somlyo v. J. Lu–Rob Enters., Inc.*, 932 F.2d 1043, 1045–46 (2d Cir. 1991)). "[T]he burden is on the removing party to prove that it has met the requirements for removal." *Ulysse v. AAR Aircraft Component Servs.*, 841 F. Supp. 2d 659, 666 (E.D.N.Y. 2012) (quoting *Codapro Corp. v. Wilson*, 997 F. Supp. 322, 325 (E.D.N.Y. 1998)).

Defendants filed a notice of removal together with a copy of the Complaint and its exhibits, totaling 196 pages, but did not file a copy of the Amended Summons with Notice. (Dkt. No. 1). Even though inadvertent, the failure to file the Amended Summons rendered the removal procedure deficient. Thus, Defendants have failed to show they met the procedural requirements for removal. Although the Second Circuit has not ruled on this issue, the majority of courts have concluded that the failure to include all of the documents from the state court record is not a jurisdictional defect, and that it may be curable. *See Vitiello v. JTJ Contracting*, No. 15-CV-4635, 2016 WL 1239259, at *3, 2016 U.S. Dist. LEXIS 41812, at *8 (S.D.N.Y. March 29, 2016) (finding remand not warranted even though defendants omitted the original complaint from the notice of removal, attaching only the amended complaint); *In re MTBE Prod. Liab. Litig.*, 399 F. Supp. 2d 340, 348 (S.D.N.Y. 2005) ("Procedural rules such as the directions found in section 1446(a) are not jurisdictional and 'the failure to file all the state court papers . . . [is] curable in the federal court if there is a motion to remand.'" (quoting Fed. Prac. & Proc. Juris. § 3733)), *and Manney v. Reichert*, No. 13-cv-4413, 2014 WL 1315382, at *11, 2014 U.S. Dist. LEXIS 43996, at *33 (E.D.N.Y. Mar. 28, 2014) ("Assuming, arguendo, that Reichert initially failed to comply with the procedural requirements of 28 U.S.C. § 1446(a) and (d), such failures do not require remanding this case to the state court."); *but see Polito v. Hanover Ins. Grp., Inc.*, No. 18-cv-6332, 2018 WL 3598873, at *5–6, 2018 U.S. Dist. LEXIS 126030, at *14 (W.D.N.Y. July 27, 2018) ("strictly construing the removal statute, and resolving all doubts in favor of remand," concluding that remand was required where the defendants failed "to attach to the Notice of Removal the exhibits to the Complaint or otherwise fil[e] . . . the exhibits within thirty days after service of the Complaint"); *Bank of Am. v. Angona*, No. 14-cv-1643, 2014 WL 1515559, at *3, 2014 U.S. Dist. LEXIS 54163, at *7–8 (E.D.N.Y. Apr. 18, 2014) (noting that "there is nothing in

the removal statute that suggests that a district court has 'discretion' to overlook or excuse prescribed procedures," and remanding where the various defects in removal included the defendant's failure to include, "as is required by 28 U.S.C. § 1446(a), a copy of all process, pleadings, and orders served") (citation omitted).

Even assuming, however, that Heffernan Brokers and Schiller's failure to file the Amended Summons with Notice together with the Notice of Removal is curable, remand is nevertheless warranted. As discussed below, because the Court concludes Risen Foods was not fraudulently joined to the action, complete diversity does not exist. Moreover, as Heffernan Brokers and Schiller indicate that their failure to include the Amended Summons with Notice was inadvertent, the Court finds no basis on which to impose sanctions.

### B. Fraudulent Joinder

It is well established that "a plaintiff may not defeat a federal court's diversity jurisdiction and a defendant's right of removal by merely joining as [a] defendant[ ] [a] part[y] with no real connection with the controversy." *Pampillonia*, 138 F.3d at 460–61 (2d Cir. 1998). Under the doctrine of fraudulent joinder, courts overlook the presence of a non-diverse defendant if "there is no possibility, based on the pleadings, that [the] plaintiff can state a cause of action against the non-diverse defendant in state court." *Id.* at 461. "In order to show that naming a non-diverse defendant is a 'fraudulent joinder' effected to defeat diversity, the defendant must demonstrate, by clear and convincing evidence, either that there has been outright fraud committed in the plaintiff's pleadings, or that there is no possibility, based on the pleadings, that a plaintiff can state a cause of action against the non-diverse defendant in state court." *Id.* The Court resolves "all factual and legal ambiguities . . . in favor of plaintiff." *Bounds v. Pine Belt Mental Health Care Res.*, 593 F.3d 209, 215 (2d Cir. 2010) (quoting *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 302 (2d Cir. 2004)).

"[T]he test of whether or not there has been fraudulent joinder is uniformly whether the plaintiff can establish a claim under state, not federal law." *Fed. Ins. Co. v. Tyco Int'l Ltd.*, 422 F. Supp. 2d 357, 378 (S.D.N.Y. 2006) (internal quotation marks omitted). "[C]ourts apply the state pleading rules relevant to the particular pleading at issue in deciding whether a plaintiff could have asserted a viable claim in state court based on that pleading." *MBIA Ins. Corp. v. Royal Bank of Canada*, 706 F. Supp. 2d 380, 394 (S.D.N.Y. 2009); *see also Kuperstein v. Hoffman–Laroche, Inc.*, 457 F. Supp. 2d 467, 471–72 (S.D.N.Y. 2006) ("Because the purpose of fraudulent joinder analysis is to determine whether a state court might permit a plaintiff to proceed with his claims, [the court] will refer to the state pleading standards as they have been applied by state courts to similar claims." (emphasis in original) (footnote omitted)). "In making [a fraudulent joinder] inquiry, courts can look beyond the pleadings to determine if the pleadings can state a cause of action." *In re Consol. Fen–Phen Cases*, No. 03–CV–3081, 2003 WL 22682440, at *3, 2003 U.S. Dist. LEXIS 20231, at *10 (E.D.N.Y. Nov. 12, 2003).

Here, the Complaint alleges that "Jason Tanner was rendered completely and permanently disabled and incapacitated as a result of a motor vehicle accident caused entirely by the negligence of a delivery truck driver employed by defendant Risen which occurred April 29, 2013." (Dkt. No. 2, ¶ 3). The Complaint further asserts that Risen Foods is liable to Plaintiff under the settlement agreement "to the extent and in the amount that Heffernan and Schiller are liable to Risen, and to the plaintiff as Risen's assignee, for their negligent, careless and reckless breach of their contract with Risen" and seeks judgment against Risen Foods in the amount of $2 million. (*Id.* ¶¶ 108–09). Defendants contend that Risen Foods is fraudulently joined because "Plaintiff essentially gave up all right to an actual recovery of money damages from Risen" in the settlement agreement. (Dkt. No. 10, at 6). Defendants argue Risen Foods should be

13

disregarded because Plaintiff "agreed that she would not seek to recover any money damages from Risen," and "courts have not hesitated to find fraudulent joinder when, as here, the plaintiff named as a defendant a party against whom the plaintiff cannot recover." (*Id.* at 14). These arguments are unpersuasive.

"Joinder will be considered fraudulent when it is established 'that there can be no recovery [against the defendant] under the law of the state on the cause alleged.'" *Whitaker*, 261 F.3d at 207 (quoting *Allied Programs Corp. v. Puritan Ins. Co.*, 592 F. Supp. 1274, 1276 (S.D.N.Y. 1984)). Here, the Settlement Agreement describes Plaintiff's release of Risen Foods as a partial release. The release provision states that Plaintiff "release[s] and forever discharge[s] Risen Foods, LLC, **EXCEPTING ONLY**, that [Plaintiff] retain[s] and reserve[s] all rights to recover further against Risen Foods, LLC, solely to the extent that Risen Foods, LLC, and or [Plaintiff] as assignee[] of Risen Foods, LLC, is, are or may be or become entitled to recover money damages against Heffernan insurance Brokers in the amount of" $2 million. (Dkt. No. 2, at 32). The agreement further provides that, in an action "brought against Risen Foods, LLC, any damages awarded against Risen Foods, LLC will be collectable only from Heffernan Insurance Brokers and its insurers and not from the personal assets of Risen Foods, LLC." (*Id.* at 32–33).

Defendants do not argue that Plaintiff has released Risen Foods from all liability, nor do they contend more specifically that Risen Foods was released from Plaintiff's negligence claim.[6] Instead, Defendants argue that "Plaintiff agreed that she would not seek to recover any money damages from Risen Foods." (Dkt. No. 10, at 9, 13). But an agreement not to execute on any judgment against Risen Foods would not bar an action for damages or render Risen Foods fraudulently joined. *See Samples v. Conoco, Inc.*, 165 F. Supp. 2d 1303, 1319–20 (N.D. Fla.

---

[6] Defendants have not challenged, and the Court does not address, the scope or the validity of the release.

14

2001) ("As Plaintiffs point out, the Defendants apparently confuse the distinction between an intention to pursue or obtain a judgment versus an intention to collect on a judgment. All that is required is a real intention to obtain a judgment against the non-diverse defendant as long as the potential for joint liability exists."); *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1291 (11th Cir. 1998) ("Supreme Court precedent is clear that a plaintiff's motivation for joining a defendant is not important as long as the plaintiff has the intent to pursue a judgment against the defendant." (citing *Chicago, Rock Island & Pacific Ry. Co. v. Schwyhart*, 227 U.S. 184 (1913)); *see also Illinois Union Ins. Co. v. US Bus Charter & Limo Inc.*, 291 F. Supp. 3d 286, 292–93 (E.D.N.Y. 2018) (determining in an insurance coverage dispute that even though "US Coachways assigned its rights under the Policy to Bull, and Bull agreed not to execute the Judgment against US Coachways" because "the Settlement Agreement explicitly provided that Bull was not releasing US Coachways from liability," "US Coachways . . . remained 'legally obligated to pay' the Judgment"); *Intelligent Digital Sys., LLC v. Beazley Ins. Co., Inc.*, 207 F. Supp. 3d 242, 247 (E.D.N.Y. 2016) ("It appears that New York courts and a majority of courts in other jurisdictions have held that an insurance company remains 'legally obligated' to pay a claim under a policy even where, as here, the claim was assigned to a third party, and the third party agreed not to execute a judgment against the insured's personal assets." (citing inter alia *Home Depot U.S.A., Inc. v. Nat'l Fire & Marine Ins. Co.*, 55 A.D.3d 671, 673–74 (2d Dep't 2008)). Resolving all factual and legal ambiguities in Plaintiff's favor, the Court concludes that Defendants have not sustained their heavy burden of showing that Plaintiff can obtain no recovery against Risen Foods under New York law. The Court therefore lacks subject-matter jurisdiction over this action.[7]

---

[7] Plaintiff cites the "automatic partial rescission" provision as an additional basis for the viability of their claim against Risen Foods, arguing that the release will be automatically rescinded if a court holds that it impedes

15

C.  **Realignment of Parties**

Defendants argue that because "[R]isen the assignor and Plaintiff the assignee are clearly aligned together and against the actual defendants Heffernan and Schiller," the Court should realign the parties in order to sustain diversity jurisdiction. (Dkt. No. 10, at 18). "[D]iversity jurisdiction cannot be conferred upon the federal courts by the parties' own determination of who are plaintiffs and who [are] defendants." *Gurney's Inn Resort & Spa Ltd. v. Benjamin*, 743 F. Supp. 2d 117, 121 (E.D.N.Y. 2010) (quotations and citations omitted). "In other words, the parties themselves may not manufacture diversity jurisdiction by manipulating the pleadings." *Genger v. Genger*, No. 17-CV-8181, 2018 WL 3632521, at *5, 2018 U.S. Dist. LEXIS 126958, at *12–13 (S.D.N.Y. July 27, 2018). "To protect against such occurrences, the Court must 'look beyond the pleadings and arrange the parties according to their sides in the dispute.'" *Id.*, 2018 WL 3632521, at *5, 2018 U.S. Dist. LEXIS 126958, at *13 (quoting *Maryland Cas. Co. v. W.R. Grace & Co.*, 23 F.3d 617, 62–23 (2d Cir. 1993)). In the Second Circuit, courts use the "collision of interests approach," *Maryland Cas. Co.*, 23 F.3d at 622, "to realign parties according to their real interests so as to produce an actual collision of interests." *Lewis v. Odell*, 503 F.2d 445, 447 (2d Cir. 1974). Realignment is a fact-specific inquiry that requires courts to "examine 'the realities of the record' to discover the 'real interests' of the parties." *Maryland Cas. Co.*, 23 F.3d at 623 (quoting *Indianapolis v. Chase Nat'l Bank*, 314 U.S. 63, 69 (1941)). The Second Circuit has explained that:

> The purpose in realigning parties is to make sure that there is a *bona fide* controversy between, as the statute commands, citizens of different states. In applying the collision of interests test therefore we must be mindful that actual and substantial conflicts in fact

---

Plaintiffs' ability to enforce its assigned rights. (Dkt. No. 5-8, at 26). The Defendants, on the other hand, claim that rescission is only a "hypothetical possibility." (Dkt. No. 10, at 17). Neither party has cited any caselaw concerning the potential applicability of this provision here. In any event, as set forth above, the Court finds that Heffernan Brokers and Schiller have failed to meet their heavy burden.

16

> existed at the initiation of the lawsuit. Hypothetical conflicts manufactured by skillful counsel must not control because such an approach would reintroduce the notion of gamesmanship so disparaged by the Supreme Court.

*Maryland Cas. Co.*, 23 F.3d at 623. Moreover, courts "must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy." *Navarro Savings Assoc. v. Lee*, 446 U.S. 458, 461 (1980). "The question of whether a party is nominal appears to be governed by essentially the same legal standard as whether a party is fraudulently joined." *Fed. Ins. Co. v. Tyco Int'l Ltd.*, 422 F. Supp. 2d 357, 389 (S.D.N.Y. 2006).

Defendants argue that there "is no bona fide controversy existing between the assignor and assignee" and that "Plaintiff wants to prove Heffernan and Schiller liable, as does Risen to avoid any theoretical exposure it might face." (Dkt. No. 10, at 18). To the extent Defendants' argument is that Risen Foods retained an interest in the negligent breach of contract claim against them, even after the assignment, such argument is without merit. *See Lehr Assocs. Consulting Engineers, LLP v. Daikin AC (Americas) Inc.*, 133 A.D.3d 533, 533 (1st Dep't 2015) ("Plaintiff has no standing to maintain this suit, because after it assigned its claims against defendants to nonparty Timber Falls Foundation, it was 'no longer the real party in interest'" (citing *James McKinney & Son v. Lake Placid 1980 Olympic Games*, 61 N.Y.2d 836, 838 (1984)). As to the absence of controversy between Plaintiff and Risen Foods, as discussed above, the Court notes that in the Complaint Plaintiff seeks "judgment against Risen in the amount of $2,000,000." (Dkt. No. 2, ¶ 109). *See, e.g., Genger*, 2018 WL 3632521, at *6, 2018 U.S. Dist. LEXIS 126958, at *15–16 (declining to rearrange the parties where the defendant had "not seriously contested his own legal obligation to pay the 2017 Demand," had "conceded that the 2004 Promise is valid and enforceable," and did not contest the amount of the plaintiff's demand; noting that the "practical reality" was that the defendant had "refused to pay" and, although the

defendant "may be well aware" that he had no "legal basis to refuse," there was "no indication that [the defendant] would pay without a Court order requiring him to do so"; and concluding that there was therefore "a justiciable controversy between" the plaintiff and defendant). "[R]esolving any doubts against removability," *Purdue Pharma L.P.*, 704 F.3d at 213, the Settlement Agreement suggests that there could be "damages awarded against Risen Foods" in "an action hereafter brought," (Dkt. No. 2, at 33), and as there has been no damages award or judgment against Risen Foods to date, there appears to be a justiciable controversy between Plaintiff and Risen Foods. Thus, realignment is not warranted.

## V. CONCLUSION

For these reasons, it is

**ORDERED** that Plaintiff's motion to remand (Dkt. No. 5) is **GRANTED**; and it is further

**ORDERED** that this action is **REMANDED** to the Supreme Court of the State of New York, County of Oneida for all further proceedings; and it is further

**ORDERED** that the Clerk is directed to mail a copy of this Memorandum-Decision and Order to the Clerk of the Supreme Court of the State of New York, Oneida County for filing in *Tanner v. Heffernan Insurance Brokers, Inc., et al.*, Index No. EFCA2018-002837, and it is further

**ORDERED** that the Defendants' motion to dismiss, (Dkt. No. 4), is **DENIED** as moot.

**IT IS SO ORDERED.**

Dated: April 24, 2019
Syracuse, New York

Brenda K. Sannes
U.S. District Judge